Good morning, Your Honors. I am Estella Pino. I represent J.J. Re-Bar, the Revested Debtor in this case, and the appellant. And I would reserve three minutes for response, rebuttal. I have a clock right there, which you can see, and I'll also try to help you on that. Thank you, Your Honor. Happy St. Patrick's Day to all of you as well. And it's an interesting date in the life of the Chapter 11 of J.J. Re-Bar, because it was exactly 12 years ago today, on St. Patrick's Day, 1999, that the plan of reorganization submitted by J.J. Re-Bar was confirmed by the Eastern District of California Bankruptcy Court. And the reason we are here is because in 2008, J.J. Re-Bar sought an order from the Bankruptcy Court enforcing the provisions of the plan of reorganization that had been confirmed 12 years ago today. We received an order from the court to be prepared to discuss the standing of the debtor, the Revested Debtor, to the liability of third parties. Would the Court like me to start with that? Yes, please. Your Honor, this case is – arises in a very different procedural context than most of the cases that have been cited by the appellee, because – precisely because we are seeking enforcement of a confirmed plan of reorganization. Pursuant to 1121A of the Bankruptcy Code, the debtor in possession, the Chapter 11 debtor, may file a plan with the voluntary petition. It may file a plan at any time during the case, even if it is an involuntary case, and – yes, sir? No, go ahead. I'll have a question for you when you break there. You're making a point, so. And, in fact, the debtor has the exclusive right, generally, unless it's circumvented by some extraordinary circumstance, to present a plan for the first 120 days of the bankruptcy case, and to confirm the plan for the 180 days from the beginning of the case. And these exclusivity periods can be extended, and, in fact, were extended in this case. It is the expectation of the reorganization process that the debtor submit and confirm a plan. Okay. So that – there's no question that that happened here, but how is the debtor harmed? What's the injury to the debtor when the IRS seeks to enforce, what's it called, a tax, a trust fund recovery penalty against an individual who is not the debtor, a third party? What's the – what's the injury to the debtor? Well, at this point, the injury is because it is in violation of provisions of a confirmed plan. How does that hurt – how does that hurt the debtor? It hurts the debtor, Your Honor, in that the provisions of that plan, the – were geared towards the principles of the debtor, maintaining the debtor in business so that jobs could be preserved, creditors can be paid, including the IRS. I mean, that comes from a case – an argument in a case was made to that effect, and that's why they were standing. But there's nothing in this record and in this complaint that suggests that somehow the debtor is tied to the third-party tax liability. Well, Your Honor, if the question had been asked at trial, we would have made the record. No, but you have the obligation, you see, first up in standing is that whoever brings the case has to have standing and the burdens on that party to confirm standing. It's not sort of an after-the-fact proposition. Well, if we're talking about the standing to seek enforcement of its own plan, I think that as the proponent of the plan, the debtor had standing. I think this case is very similar to the Espinoza case, the Ninth Circuit case that was affirmed by the United States court, and in that case the debtor sought implementation, enforcement of his plan. It was a Chapter 13 plan. Here the debtor is seeking enforcement of what we consider to be three different redundant, repetitive provisions in the plan of the organization that was defined. Doing this, though, the enforcement is for the purpose of protecting. What's his name? I've got to get this right. Skokins. Mr. James M. Skokin. Joseph S. and Joseph M. There's a father and son. We're talking about the son here, aren't we? Or are we talking about both of them? We're talking about both of them. Both of them were the target of the summons that led us to go to the bankruptcy court and say, we believe, Your Honor, that this violates the provision of the plan. So as I understand it, under the tax code provision that's in issue here, 26 U.S.C. section 6672, these folks are individually, personally liable. And that determination has never been made because of the debtor. But I mean, that's the theory. I mean, that's why they're using this statute to go after these two individuals. Let's go one step further. It's not really a theory. That's what the statute says. I mean, you might not like it, but doesn't the statute say that basically you can go after the individuals? No question that the statute says that. That's different than the debtor. Correct? The United States seeks pre-petition fault, penalty for pre-conditioned failure to pay. That is exactly pre-petition failure to pay is exactly what is enjoined and released in the plan. They're only seeking the penalty. And the penalty is assessed based on the trust fund portion of the tax that the plan provides for in full payment. The plan provides and the debtor is fully performing under the plan. This is the odd thing about it, too. I guess we have to ask the United States. But as I read this, my understanding was if they collected from the individuals, in effect, it would become a credit on the corporation's liability. So, in fact, the corporation would be better off, correct? Except that the individuals would be distracted from the corporation and they may come after the corporation for indemnity. I believe that that is the standing argument that was made in the Church of Scientology case that the court referenced in its order regarding the standing issue. Are there any corporate documents on that point in terms of indemnity? I mean, there's suggestion that really there is no segregation or indemnity in these kind of a tax situation. So my question is, is there any kind of a contractual indemnity available here? Not under the plan, Your Honor. The plan does not provide for any contractual indemnity as to the individuals because of the provisions of the injunction. The individuals have their own separate counsel that corresponded with the IRS. And the plan of reorganization is to make it attractive to the principals to continue working, to continue operating this debtor to pay off all of the creditors. And the – it's not disputed that this is – most Chapter 11s don't work. Most Chapter 11s don't get it. Another question I have is that this – in a way, all these questions about standing, the Anti-Injunction Act, et cetera, all revolve around whether under this kind of a tax, as a matter of law, the debtor is the primary obligor or not. Is that a legal question? I think this is where the similarity is between this hearing and the last one about plain English and clear English. I think that primary obligor means primary first in time. Maybe in my mind, I was literally translating it from Spanish to English, primero, primary, primary obligor, first in time. And we cite – Primeramente. Primeramente. Primero. Primero. And the FISOLI trading case that we cite, I think it's very important because it contains citations and references to the IRS's own Internal Revenue Manual. And in its own Internal Revenue Manual, the IRS differentiates between the employer as having the primary liability and the individuals, which can be assessed under 672, as having the secondary liability or being a secondary source of collection. And we cite the Greenberg case, which had been – which the IRS had been deeply involved in, they were the other party to that case, by a well-known bankruptcy jurist, Alexander Pasquet, where he referenced the employer as the primary obligor. This nomenclature just didn't arise out of the blue. It was nomenclature that had been used in the case law before this plan was confirmed, and it had been used in the IRS's own Internal Revenue Manual where they distinguished between primary and secondary collection sources. Let's say that it's not completely – if we were to say it's not completely clear what a primary obligation is, then aren't you back into the Anti-Injunction Act, and it all kind of boils down to that you can't really go in and put a red flag up against the tax collection, much as one might want to. Well, Your Honor, I think that it goes back to the issue of – that this Court addressed in the Trulis v. Burton case about confirmation of a plan and the cite to the case that I would like to leave the Court with. Once a bankruptcy plan is confirmed, it is binding on all parties. And all questions that could have been raised pertaining to the plan are entitled to res judicata effect. Since the plaintiffs never appealed the bankruptcy court's confirmation order, the order is a final judgment, and plaintiffs cannot challenge the bankruptcy court's jurisdiction over the subject matter. And may I reserve my three minutes, unless you have a question you'd like me to answer right now? But just on that point, but if there's a material provision that's ambiguous, then my understanding is you don't have res judicata effect on that. Well, we don't think that the provisions were ambiguous. The plan was almost repetitive and redundant. It says your sole recourse is the treatment you're being provided under the plan. It says release of liability. And it says injunction. And the plan was, I believe, clear, especially given the context that that nomenclature had been used by the IRS in its own internal manual and by other courts in addressing this issue. But I'm going to give you your time for rebuttal, so I have one more question. Certainly. I just raised another question in my mind. We have the general principle about final confirmation of the plan, but in interpreting what primary obligory is, we also have these other statutory construction principles about if the IRS is going to waive their right to various taxes, it has to be with some specificity. So that's a more specific principle. How does that fit into this? I think, Your Honor, it fits in because, first of all, we believe that the language was clear, and we also believe that it fits in into the context of the plan confirmation process. I go back to this case being on all fours with Espinoza, and Espinoza involved a Chapter 13 plan, which is a very summary-type proceeding. In the Chapter 13 plan, creditors get notice, and if they don't object, the plan is confirmed. The Chapter 11 process is very different, and we've given you the record of every step along the way. The plan has to be sent out to a vote by creditors with an order from the bankruptcy court setting a confirmation hearing and a date for objection to confirmation. And it has to be accompanied by a disclosure statement that has already been approved by the bankruptcy court. Our disclosure statement was approved by the bankruptcy court after notice in a hearing at, in fact, several hearings. The disclosure statement contained all sorts of disclaimers, and we've given you the record of, read this carefully, your rights may be affected. It pirated the language of Section 1141 of the bankruptcy code that it would be binding on all creditors, even if they didn't vote on the plan. And I think I have your point in mind on that, and why don't we turn to the government then. Thank you. Thank you, Your Honor. Good morning. May it please the Court. I'm Rachel Wolitzer, representing the athlete of the United States. The lower courts correctly held that the Anti-Injunction Act precluded the bankruptcy court from enjoining the trust fund recovery penalty investigation of the Skokans, which in any event did not violate the discharge provision in the debtor's plan. Addressing the standing issue in the Court's order, I would just like to point out that we did include a brief footnote about the standing issue, and there is a case by this standing to object to the tax liability of the third party, of a third party. But expanding on that, because this case is so clearly controlled by this Court's decision, decisions in American Bicycle and Miller, the Court doesn't necessarily need to reach the standing issue. But we would agree that there has been no showing of an injury to the debtor in this case. As Judge McComb, excuse me. I would like to ask you, which point of this is strongest? I would like to ask you, which point of this is strongest? Which point is the strongest? Anti-injunction or no standing? What do you like? Thank you, Your Honor. We do feel, again, that American Bicycle absolutely controls in this case. The Anti-Injunction Act could not more clearly prohibit injunctions against the collection of taxes. And in this case, that's precisely what the debtor sought. And American Bicycle holds, in the trust fund recovery penalty context, that a debtor cannot seek to enjoin the trust fund recovery penalty against responsible officers of the debtor. So we do feel that clearly applies, and Miller as well, which I will discuss. The Anti-Injunction Act would only bar the court from issuing any kind of order against the attempt to collect any tax, is that right? Yes, Your Honor. That wouldn't prevent the court, the district court, from attempting to resolve any interpretation of the plan, would it? Well, actually, the Anti-Injunction Act would be relevant in resolving any doubt over the interpretation of the plan, because the plan should be clear. But it wouldn't prohibit them, it wouldn't prohibit the court from interpreting the plan. Well, we would argue in the first instance that the Anti-Injunction Act, even if the plan was clear, that the trust fund recovery penalty were discharged, that that in itself would violate the Anti-Injunction Act, and that strictly applying the Anti-Injunction Act, there would be no bankruptcy court jurisdiction to issue the injunction. If that were the case, what do you do with those cases that say once you confirm a plan and it's gone through all the appellate time and there's no challenge to it, it doesn't matter that the guts of the plan might include something that is either jurisdictionally defective or, in fact, even illegal? Yes, Your Honor. I believe you are referring to the Trulis case by this Court and the Espinoza case by the Supreme Court. Neither of those cases involved taxes. So the Anti-Injunction Act was not implicated in those cases. And, in fact, there were no jurisdictional issues either. In Trulis, there was an express provision releasing the claims that were at issue. And these were standard state law claims, fraud, RICO. And the plan specifically released and discharged claims against the debtor officers. So there were no taxes involved here. The Anti-Injunction Act was not involved. And it wasn't a jurisdictional issue either. Would you ask you something a little bit different, then? It goes along the lines of Judge Paez. I mean, to the extent that there may be almost a bifurcated aspect of the case, to the extent that if we're asking to enjoin tax collection, it would go down one potential road. I haven't certainly made up my mind yet. Down the Anti-Injunction Road, Anti-Injunction Act Road. But to the extent there's something more with respect to interpretation of the plan or something else, the Court might have jurisdiction to figure that out. Would you agree with that way of looking at it? Well, certainly there are alternative grounds on which to decide the case. Although, as I mentioned in response to Judge Paez's question, the Anti-Injunction Act is relevant in interpreting the plan, because you should interpret the plan in a lawful manner, if possible. So interpreting the plan consistently with the Anti-Injunction Act as not discharging non-debtor liabilities would be preferable, because it is a lawful interpretation. And similarly, there's another — excuse me, Your Honor, is there? Well, how does that work with respect to how the IRS characterizes this tax penalty liability in its manual, as counsel referenced, being primary to the debtor? I'm not really sure of the precise language of the manual that counsel is relying on. I checked the Fiasol case while we were in — during the argument, and I saw there were provisions of the manual that were cited that said that the IRS's policy is not to double-collect the trust fund taxes. So if they do recover the trust fund taxes from the debtor's officer or the taxpayer's officer, then they won't double-collect the trust fund portion of the liability from the corporation. So in — as I think was alluded to earlier, that, in fact — the trust fund recovery penalty, in fact, helps the debtor, because if the trust fund penalty — recovery penalty is paid by the officer, then that reduces the trust fund portion of the debtor's liability. And there really has been no showing whatsoever of any injury to the debtor. And, again, the Court has held in Graham that the taxpayer does not have standing to object to the tax liability of a third party. Now, getting down to — Is the penalty of the taxpayer the same as the debtor? The tax — the responsible officer's? Yeah. Okay. Yeah. Is it the same? Is it just, you know, just the same amount? Okay. The employer's tax liability is composed of the entire payroll tax obligation, which includes the trust fund portion, which is the portion that's withheld from the employee's wages, as well as the employer's portion, which is not part of the withholding. So there's the trust fund portion, the non-trust fund portion. The 6672 penalty, which, as we've pointed out in our brief, is a separate liability, is — does consist of the trust fund. The amount of it is equal to the trust fund portion of the liability. That's what the penalty is. It's the trust fund portion of the payroll taxes. Because the idea being that if the responsible officer's withheld this money and then or for whatever purpose, then they should be penalized for it. Well, that is what the trust fund recovery penalty consists of. So it is — but as we pointed out in our brief, it is a completely separate liability. It's not derivative. It's not vicarious. It's — it's — the basis of it is completely separate. The trust fund recovery penalty is imposed as a consequence of the conduct of the officer in not paying over the taxes. The payroll tax liability arises as an incident of the employment and the payment of wages. And they're completely separate liabilities. One is collected from the officer and their assets. The other is collected from the assets of the employer. So getting to the interpretation of the plan, we'd like to start out under — Miller is directly on point. It could not be more applicable. The first thing that Miller held is that the plan should be interpreted against the debtor as the proponent of the plan. The debtor does not dispute that it put forward this plan. It was responsible for proposing the plan and submitting the plan as the drafter of the plan. The language of it should be interpreted against the debtor. And Miller also held, again, directly on point, that a discharge provision must clearly and explicitly identify the statutory right to be waived or discharged by citation or explanation of the substance of the right. Here, the discharge provision, referring to the primary obligor language, did not mention 6672, did not mention the SCOCANs, the responsible officers, did not even mention any type of third-party tax liability. There was simply no clear and explicit waiver in this case. And as in Miller, the discharge should not cover this statutory right. The debtor did point out in the reply brief that there were too many creditors in this case to worry about listing every single class of creditor that was discharged. But the IRS was a major creditor, if not one of the largest creditors in this case. There was a $3 million claim. Well, it was eventually determined to be $3 million. And at the time, I believe at the time of the plan, it had been filed for $800,000. So the IRS was a major creditor, and we're talking about personal liability of the officers. So I don't think we can look at this as, well, they intended to include the trust fund recovery penalty, but they just didn't have room in the plan for it. It was clearly something that was not included in the express language of the plan. And if you look at the primary obligor language, admittedly there is no case law precisely on point saying that a TFRP is not a primary obligation of the debtor in this case. But the primary obligor on the trust fund recovery penalty is the officer, not the debtor. Again, they're separate and distinct liabilities. And if you look at the customary definition of a term like primary obligor, what comes to mind is a guarantee situation, a surety, co-makers on a loan, that type of thing, not where it's a completely separate liability as it is in this case. In that regard, the language of the plan talks about based on a claim pursuant to which the debtor is the primary obligor. So wouldn't the claim be for the trust fund taxes, in which case maybe there is no primary obligor, maybe there's a dual obligation, I don't know. But it's not that under the statute the debtor isn't the primary obligor, but the plan talks about a claim against any party based on a claim. So I'm just wondering if the claim is for the money, for the trust fund money, and then you have to analyze it after from there. Well, the debtor is trying to establish that the trust fund recovery penalty against the officers was released in the plan. So the debtor was not the primary obligor on the trust fund recovery penalty. It's a separate liability. It's assessed against the officers. The debtor is the primary obligor. Maybe I wasn't really clear in my question, because I understand that point. But the way that the plan is written, it says it's based on a claim pursuant to which the debtor is the primary obligor. So my question is the claim, the tax penalty, or is the claim simply the claim for the unpaid trust fund taxes? It's a separate liability. Once the ---- So there ---- but it all arises from the same nucleus, correct? It's the ---- the amount is the same. The amount of the trust fund recovery penalty is equal to the amount of the trust fund portion of the payroll tax liability. But the claim against the debtor is the entire payroll tax liability, the withheld amounts, the employer's portion. The amount is the same, but it's a separate liability, and the debtor is the primary obligor on the payroll tax claim, the claim that was filed in the bankruptcy, not the trust fund recovery penalty, which I point out also hasn't even been assessed. It wasn't even being investigated at the time that the plan was confirmed, so it really could not have been contemplated at that time. I'd like to also address the two cases that relied upon by the debtor, the Trulis case by this Court and the Espinoza case by the Supreme Court. These cases are clearly distinguishable. First of all, in both cases, the discharge or release language in the plan expressly applied to the claims at issue. As I stated in Trulis, the plan expressly released the claims against the non-debtors that were at issue in the case. Similarly, in Espinoza, there was express language in the plan discharging the student loan interest that was at issue in that case. Also, neither of those cases involved taxes, so the Anti-Injunction Act was not implicated. It was not a jurisdictional issue, and therefore, those cases are clearly distinguishable. Again, the Anti-Injunction Act is central here because under American Bicycle, the Court clearly held that the non-debtor tax liabilities may not be enjoined. Also, there's a specific statute in the Bankruptcy Code, Section 524E, which provides an under the Ninth Circuit, this Court has issued several opinions holding that 524E, which deals with non-debtor liabilities. This section precludes the Bankruptcy Court from discharging the liabilities of non-debtors. And the cases by this Court on that point were Loewenschus and the American Hardwoods case. So clearly, there are a number of cases decided by this Court that are directly on point for the Anti-Injunction Act issue, for the interpretation of the plan issue. And as far as the race judicata issue, the two cases relied on by the debtor, Trulis and Espinoza, are distinguishable for the reasons that I just stated, that those cases involved express plan language and did not involve taxes or the Anti-Injunction Act. I'd like to point out also that in terms of the standing issue, the plan in this case is being funded by the ongoing business. So there isn't the type of need. The officers really, their interests are not exactly the same, and the debtor is really not harmed because the debtor, again, the payroll tax liability would be reduced if the trust fund recovery penalty were paid by the officers addressing the standing issue. I believe am I out of time, Your Honor? Okay. I don't know why nobody sees that clock. I see the stop, but then the time is running. And the time keeps going because that means you're that far over. Right. I'm sorry, Your Honor. It's all right. Thank you. We gave other counsel a little bit of extra time as well. Excuse me. Thank you. So you may have two minutes for rebuttal. Your Honor, going back to the American Bicycle case, we think again this case is very procedurally different because in this case the injunction was issued in the plan. And addressing the 524 issue. You can't do indirectly what you can't do directly. So if you have an overriding Federal statute that says you can't enjoin a collection of taxes, what's your best authority for saying you can ignore that statute and go underneath it somehow? Espinoza. Which did that involve taxes? That did not involve taxes, but involved student loans. And the anti-injunction provision is a statute of the United States. The student loan provision, Espinoza involved a student loan, and the argument was in order for a student loan to be discharged under Section 523 of the Bankruptcy Code, equally a United States statute, it has to be upon a determination that it would work an undue hardship on the debtor for it not to be discharged. And Bankruptcy Rule 7001 says you have to bring that type of action as an adversary proceeding, which is basically the equivalent of a full-blown lawsuit in bankruptcy court or before a bankruptcy judge. So in Espinoza, the plan provided for the discharge of the interest on the student loan without an adversary proceeding and without a determination by the bankruptcy court that there had been undue hardship. But there was no objection to the plan, again, in a much more abbreviated proceeding than what we had before us. And the do I have to stop? Yes. I want you to finish your sentence. And similarly, in this case, the Anti-Indunction Act, this Court's Scientology case, does relate very circumscribed circumstances under which an injunction can issue. In this case, the injunction was issued without those findings, just as in Espinoza the discharge of the student loan was made without the finding required by Section 523. Thank you. Thank you, Your Honors. Both of you for your very extensive briefing and the follow-up on standing and for your argument this morning. J.J. Rebar v. United States is submitted.
judges: Reavley, McKeown, Paez